# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MICHAEL TIMOTHY ULMER, Sr.,

    *Plaintiff*,

v.                                  CASE NO. 2:13–CV–14849

COMMISSIONER OF              DISTRICT JUDGE GERALD E. ROSEN
SOCIAL SECURITY,               MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Supplemental Security Insurance benefits ("SSI"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 11.)

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/March2008 RevisedPolicy.aspx. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Plaintiff Michael Timothy Ulmer was forty years old at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 32, 147.) Plaintiff worked as a truck driver for a septic service for one year, a handy man doing odd jobs for six years, and as a general laborer for two years. (Tr. at 162.) Plaintiff filed the present claim on October 18, 2010, alleging that he became unable to work on September 2, 2010. (Tr. at 147.) The claim was denied at the initial administrative stages. (Tr. at 65.) In denying Plaintiff's claims, the Commissioner considered disorders of back, discogenic and degenerative, and ischemic heart disease, with or without angina, as possible bases for disability. (*Id.*) On June 6, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") John A. Ransom, who considered the application for benefits *de novo*. (Tr. at 16-31, 32-49.) In a decision dated August 29, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 27.) On September 5, 2012, Plaintiff requested a review of this decision. (Tr. at 14-15.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 26, 2013, when, after review of additional exhibits[2] (Tr. at 427-86,) the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On November 25, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

B.     **Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for

---

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990), *superseded by statute on other grounds*, Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105. The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the Social Security Agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (*quoting Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly

3

since the ALJ is charged with observing the claimant's demeanor and credibility'") (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record before the ALJ only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

5

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . ." *Jones*, 336 F.3d at 474, *cited with approval in Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden

6

transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since September 15, 2010, the application date. (Tr. at 21.) At step two, the ALJ found that Plaintiff's degenerative disc disease, coronary artery disease, knee pain and a major depressive disorder were "severe" within the meaning of 20 C.F.R. § 404.1520. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 21-22.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. at 25.) The ALJ also found that Plaintiff was 38 years old on the date the application was filed, which is a younger individual age 18-49 under 20 C.F.R. § 416.963. (Tr. at 26.) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 22-25.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 27.)

### E. Administrative Record

I note, at the outset, that although pages 427 through 486 were not a part of the record before the ALJ, most of the evidence was a mere duplicate of evidence in the record. The relevant medical evidence contained in the administrative record indicates that Plaintiff was involved in a

7

car accident in December of 2006 and has reported back pain ever since. (Tr. at 211.) Plaintiff underwent a lumbar epidural steroid injection for back pain on January 23, 2007. (Tr. at 213.)

On May 10, 2010, Plaintiff was evaluated by Brian Beck, D.O. (Tr. at 310-14.) Plaintiff's physical examination was normal except for tenderness to palpation over L5-S1. (Tr. at 313.) As to range of motion, "testing reveals very guarded and decreased active lumbar flexion, extension, rotation and side bending, all reproducing pain in the left low back" but despite these symptoms, "[t]here is functional range of motion on the lower extremities." (Tr. at 313.) Muscles testing showed "strength graded 5/5 bilaterally with hip flexion, knee extension, knee flexion, dorsiflexion and extensor hallucis longus muscles." (*Id.*) Dr. Beck diagnosed "[l]ikely left S1 radiculopathy." (Tr. at 314.)

Plaintiff was evaluated by James Atathakios, Jr., M.D. on several occasions. On the most recent visit, May 24, 2010, Plaintiff's physical examination was normal except for tenderness to palpation over L5-S1 and over the left sacroiliac joint. (Tr. at 203-04, 270-71.) As to range of motion, "testing reveals very guarded and decreased active lumbar flexion, extension, rotation and side bending, all reproducing pain in the left low back," but despite these symptoms "[t]here is functional range of motion on the lower extremities." (Tr. at 204, 271.) Muscles testing showed "strength graded 5/5 bilaterally with hip flexion, knee extension, knee flexion, dorsiflexion and extensor hallucis longus muscles." (*Id.*) Dr. Atathakios diagnosed "[l]ikely left S1 radiculopathy." (Tr. at 205, 272.)

On September 2, 2010, Plaintiff was hospitalized for a myocardial infarction. (Tr. at 217.) A chest x-ray taken that day was normal. (Tr. at 325.)

8

On October 12, 2010, Plaintiff underwent a successful left-heart cardiac catheterization and selective right- and left-coronary angiography. (Tr. at 219-43, 279-82.)

On March 8, 2011, Richard J. Kovan, M.D., examined Plaintiff and found that he

> demonstrates a normal gait pattern without an assistive device. He can toe walk and heel walk. He has full lumbosacral spine flexibility in forward flexion. He reports discomfort at end range at approximately 80 degrees. He has full back extension and right and left lateral bending. Muscle strength reflexes were present and symmetrical at the patellae and Achilles. He reports normal sensation to pinprick of both lower extremities. He has normal strength to resisted hip flexion, knee extension, knee flexion, dorsiflexion, and great toe extension. he has negative straight-leg raising maneuvers both in the seated and supine position. He has full range of motion of both knees an hips. No gross evidence of muscle atrophy, deformity, erythema, edema, or effusion.

(Tr. at 304.) Dr. Kovan indicated that Plaintiff could perform all possible tasks, e.g., sitting, standing, stooping, climbing stairs. (Tr. at 305.)

Plaintiff sought treatment in the emergency room on many occasions. On July 28, 2011, Plaintiff complained of chest pain, but testing revealed no evidence of cardiopulmonary process, so Plaintiff was released. (Tr. at 356-71.) Since Plaintiff had also complained of nausea, a CT scan of the abdomen and pelvis was taken and they were both normal. (Tr. at 372-75.) On August 7, 2011, Plaintiff complained again of chest pain but left the next day against medical advice. (Tr. at 334, 355.) On September 4, 2011, Plaintiff complained of "blood in semen." (Tr. at 346.) Plaintiff was discharged that day and was told to follow up with a urologist if the problem continued. (Tr. at 349-50.) On January 18, 2012, Plaintiff complained of back pain not based on any acute injury. (Tr. at 337, 428.) Plaintiff was assessed as having back pain "most likely caused by a strain of the muscles or ligaments that support the spine" and was discharged with pain

9

medication. (Tr. at 341-42, 432-33.) On December 5, 2012, Plaintiff complained of chest pain, tests were run, and he was observed and then discharged. (Tr. at 434-42, 466-86.)[3]

Plaintiff sought counseling assistance from Concepts in Counseling, LLC, for anxiety from November 2011 through March 2012. (Tr. at 377-92.) On December 8, 2011, Plaintiff sought treatment with Fred Wurster, D.O., P.C. for "URI symptoms." (Tr. at 415.)

In January 2012, Dr. Ethiraj Raj, M.D., F.A.C.C., F.S.A.I., reported that Plaintiff's most recent echocardiogram showed "[n]ormal chamber dimensions, [s]lightly diminished LV systolic function, EF 45-50%, [m]ild mitral and tricuspid regurgitation" and "[n]o evidence of pericardial effusion." (Tr. at 396.) In addition, Plaintiff's most recent EKG "revealed normal sinus rhythm, nonspecific ST/T wave changes." (Tr. at 397.) Dr. Raj stated, "[i]n summary, Michael Ulmer is stable from the cardiac point of view." (*Id.*) The test results were also a part of the administrative record. (Tr. at 423-35.)

On June 5, 2012, Sarah Shelton, L.M.S.W., A.C.S.W., C.A.A.C., from Concepts in Counseling, wrote Plaintiff's attorney indicating that Plaintiff's diagnosis was "Major Depression- single episode" based on "panic attacks regarding dying from a heart attack[.]" (Tr. at 408.) Ms. Shelton also stated that Plaintiff "reports a history of chronic pain and use of marijuana." (*Id.*)

At the administrative hearing, Plaintiff testified that his back pain is "between eight and 10 majority of the time" and that he has had "panic attacks" since his heart attack in 2010. (Tr. at 36, 44.) Plaintiff stated that he can only stand or sit for about fifteen to twenty minutes at a time. (Tr. at 36, 41.) If Plaintiff tries to stand for longer, he gets "lightheaded, then I can feel the blood rush out of my body, I turn pale white, and then I start to feel like I'm going to pass out and get sick." (Tr.a t 41.) Plaintiff

---

[3] On February 19, 2013, Plaintiff complained of back pain, he was assessed and discharged with instructions that back pain "usually caused by an injury to the muscles or ligaments of the spine."(Tr. at 443-62.) Although this evidence was not before the ALJ, I note that even if it were considered, it would not undermine the ALJ's findings.

testified that he does not lie down during the day nor could he sleep at all at night. (Tr. at 41-42.) Plaintiff is able to drive for "25 to 45 minutes" at a time. (Tr. at 43.) Plaintiff testified that he watches television, can care for his "personal needs," and "cook[s] for [him]self." (Tr. at 44-45.)

Plaintiff's counsel asked about psychological issues and Plaintiff responded that he has been diagnosed "with severe depression and [his doctor] had mentioned something about this PTSD, post-traumatic stress syndrome" based on his having experienced a heart attack. (Tr. at 40.)

The ALJ asked the vocational expert ("VE") at the hearing to consider an individual with Plaintiff's background who

> could perform light work, but he'd require a job with the following restrictions. He'd require a sit/stand option at will with no repetitive bending, twisting, or turning; no crawling, squatting, kneeling, and occasional stair climbing; no air or vibrating tools. It would need to be regular, simple, repetitive work with occasional supervision; no constant close attention to detail; low stress; limited contact with the public.

(Tr. at 46.) The VE responded that such a person could perform the 2,000 bench assembler jobs, 4,500 packer jobs, and 3,000 inspector jobs available in the state of Michigan. (*Id.*) When asked by the ALJ, the VE indicated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 46-47.)

### F.     Analysis and Conclusions

### 1.     Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 22-25.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional

11

>       limiting factors such as loss of fine dexterity or inability to sit for long
>       periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As indicated above, if the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. 42 U.S.C. § 405(g); *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff argues that the ALJ failed to properly assess Plaintiff credibility, failed to properly evaluate the medical records, thereby forming an inaccurate hypothetical that did not accurately portray Plaintiff's impairments. (Doc.9 at 7-13.) Although the Commissioner noted that Plaintiff's brief includes boilerplate language regarding medical source opinions (Doc. 11 at 13,) this particular brief by Plaintiff's counsel does not. I fear that the Commissioner's counsel has slipped into the same habit for which it has properly criticized Plaintiff's counsel in the past.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be

12

expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Finally, the ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "'objective evidence of the pain itself'" is not required. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweicker*, 749 F.2d 1066, 1071 (3d 1984)), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)   [D]aily activities;

(ii)  The location, duration, frequency, and intensity of . . . pain;

(iii) Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)   Treatment, other than medication, . . . received for relief of . . . pain;

(vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3); *Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

13

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless [she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most [she] can still do despite [her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).. The hypothetical is valid if it includes all credible limitations developed prior to step five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Mich. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 2009).

As to Plaintiff's credibility, the ALJ properly considered the requisite factors (Tr. at 22-25) and concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (Tr. at 25.)

I suggest that the ALJ's credibility findings and RFC findings are supported by substantial evidence. Although Plaintiff has reported back pain since her car accident in December 2006, (Tr. at 211), there is no evidence that such injuries were disabling. None of Plaintiff's physicians made findings or conclusions that would be consistent with disability. Although Plaintiff reported tenderness to palpation over L5-S1, Dr. Beck found Plaintiff's range of motion was somewhat decreased but functional and his muscle testing showed "strength graded 5/5 bilaterally with hip flexion, knee extension, knee flexion, dorsiflexion and extensor hallucis longus muscles." (Tr. at 313.) Dr. Atathakios's findings were consistent with Dr. Beck's. (Tr. at 203-04, 270-71.) Dr. Kovan found Plaintiff's range of motion and strength to all be intact and concluded that Plaintiff

14

is able to perform all tasks, including standing, sitting, walking, stooping and climbing stairs. (Tr. at 304-05.) In addition, the modest treatment Plaintiff received for back issues, prescription drugs, and one epidural steroid injection also supports the ALJ's findings since such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

Although Plaintiff suffered a myocardial infarction and cardiac catheterizaion in 2010, (Tr. at 217, 219-43, 279-82), there is no evidence that this condition is disabling, either alone or in combination with other conditions. Plaintiff reported to the emergency room several times complaining of chest pain; however, no further cardiac symptoms or other issues were ever found. (Tr. at 334, 355-71, 434-42, 466-86.) In addition, Dr. Raj reported that Plaintiff's most recent echocardiogram and EKG were normal except for some "[s]lightly diminished LV systolic function" (Tr. at 396) and "nonspecific ST/T wave changes." (Tr. at 397.) Dr. Raj stated, "[i]n summary, Michael Ulmer is stable from the cardiac point of view." (*Id.*) I therefore suggest that the ALJ's credibility findings and resulting RFC conclusions were supported by substantial evidence.

I further suggest that the hypothetical posed to the VE was in harmony with the objective record medical evidence and Plaintiff's own statements that he does not lie down during the day, is able to drive for "25 to 45 minutes" at a time, watches television, is able to care for his "personal needs" and "cook[s] for [him]self." (Tr. at 41-45.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.     Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "'zone of choice' within which decisionmakers may go either way without interference from the courts," *Felisky*,

35 F.3d at 1035 (quoting *Mullen*, 800 F.2d at 545), as the decision is supported by substantial evidence.

### III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 25, 2014                    /S PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date using the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: September 25, 2014          By      s/*Jean L. Broucek*
                                  Case Manager to Magistrate Judge Morris

17